**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FEDERAL EXPRESS CORPORATION,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **IKHILOV LAW GROUP, P.C. d/b/a IKHILOV ASSOCIATES *et al*.,** <br><br> **Defendants.** | **Case No. 26-CV-02859 (JPO)** <br><br> **ORAL ARGUMENT REQUESTED** |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO IKHILOV DEFENDANTS' MOTION TO DISMISS

**COMES NOW,** Plaintiff Federal Express Corporation ("FedEx" or "Plaintiff"), who files this, its Memorandum of Law in Opposition to the Memorandum of Law in Support of Ikhilov Defendants' Motion to Dismiss.

Dated: October 30, 2026

Respectfully submitted,

**THE WILLIS LAW GROUP, PLLC**

By: */s/ William J. Clay*

**WILLIAM J. CLAY**
**MICHAEL A. GRAVES**
**OLIVIA T. KNOTT**
**AARON E. MEYER**
1985 Forest Lane
Garland, Texas 75042
Telephone: 214-736-9433
Facsimile: 214-736-9994
Service Email: service@thewillislawgroup.com

***ATTORNEYS FOR PLAINTIFF***
***FEDERAL EXPRESS CORPORATION***

cc: All parties and counsel of record (electronic)

# TABLE OF CONTENTS


**Page**

Table of Contents ........ iii

Table of Authorities ........ v

I. Introduction ........ 1

II. Argument & Authorities ........ 1

A. Legal Standard for 12(b)(6) ........ 1

B. The Court Should Disregard the Scher Declaration ........ 1

C. Collateral Estoppel Does Not Apply ........ 2

D. Defendants' Racketeering Proximately Caused FedEx's Damages ........ 3

E. FedEx's Damages are Ripe ........ 6

F. The Complaint Sufficiently Pled RICO Violations ........ 7

1. The Complaint Sufficiently Alleges an Association-in-Fact Enterprise ........ 7

2. The Complaint Adequately Alleges Ikhilov Participated in the Enterprise ........ 10

3. The Complaint Adequately Alleges Ikhilov Committed a Pattern of Racketeering Activity ........ 11

a. There is no per se rule excluding litigation activities from serving as RICO as predicate acts ........ 11

b. The Complaint alleges mail and wire fraud with the requisite particularity ........ 14

G. The Complaint Properly Alleges a RICO Conspiracy ........ 20

H. The Complaint Properly Alleges a Common Law Fraud Claim ........ 20

I. The Complaint Properly Alleges an Aiding-and-Abetting Fraud Claim ........ 22

J. The Unjust Enrichment Claim Does Not Duplicate the Fraud Claim ........ 24

K. The Complaint Adequately Pleads a Section 349 Claim ........ 24

L. The Complaint Adequately Pled a Section 487 Claim ........ 25

M. The Complaint Adequately Pled a Declaratory Judgment Claim ........ 27

III. Conclusion ....................................................................................................................27

Word Count Certification ...........................................................................................................28

## TABLE OF AUTHORITIES

### Cases

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*
No. CV-04-2934, 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005) ............... 15, 16, 21

*Alix v. McKinsey & Co.*
23 F.4th 196 (2d Cir. 2022) ............ 6

*Allenby, LLC v. Credit Suisse AG*
134 A.D.3d 577 (1st Dept. 2015) ............ 21

*Allstate Ins. Co. v. CPM Med. Supply Inc.*
No. 23-CV-5864, 2024 U.S. Dist. LEXIS 153880 (E.D.N.Y. 2024) ............ 14

*Allstate Ins. Co. v. Halima*
No. 06-CV-1316, 2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. Mar. 19, 2009) ............ 21, 22

*Allstate Ins. Co. v. Lyons*
843 F.Supp.2d 358 (E.D.N.Y. 2012) ............ 7, 19, 25

*Amalfitano v. Rosenberg*
12 N.Y.3d 8 (2009) ............ 26

*Anderson News, L.L.C. v. Am. Media, Inc.*
680 F.3d 1624 (2d Cir. 2012) ............ 9

*Angermeir v. Cohen*
14 F.Supp.3d 134 (S.D.N.Y. 2014) ............ 3

*Azrielli v. Cohen Law Offices*
21 F.3d 512 (2d Cir. 1994) ............ 10

*Bankers Trust Co. v. Rhoades*
859 F.2d 1096 (2d Cir. 1988) ............ 3, 6

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............ 9

*Boritzer v. Calloway*
No. 10 Civ. 6264 (JPO), 2013 U.S. Dist. LEXIS 11119 (S.D.N.Y. Jan. 24, 2013) ............ 14, 15

*Bouchard Transp. Co. v. Long Is. Light. Co.*
807 F.App'x 40 (2d Cir. 2020) ............ 2

*Bridge v. Phoenix Bond & Indem. Co.*
553 U.S. 639 (2008) ............ 6

*Canyon County v. Syngenta Seeds, Inc.*
519 F.3d 969 (9th Cir.), *cert. denied*, 555 U.S. 970 (2008) ............ 3

Carbon Inv. Partners, LLC v. Bressler
No. 20 Civ 3617, 2021 U.S. Dist. LEXIS 166293 (S.D.N.Y. Sept. 1, 2021) .......................... 24

*Carroll v. U.S. Equities Corp.*
No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605 (N.D.N.Y. Nov. 30, 2020) ................. 12, 13

*Cascardo v. Stacchini*
100 A.D.3d 675 (2d Dept. 2012) ........................................................................................ 21

*CMG Holdings Grp. v. Wagner*
No. 15-CV-5814 (JPO), 2016 U.S. Dist. LEXIS 121135 (Sept. 7, 2016)............................... 17

*Coopers & Lybrand v. Levitt*
52 A.D.2d 493 (1st Dept. 1976)........................................................................................... 22

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*
758 F.Supp.2d 153 (E.D.N.Y. 2010) .................................................................................... 16

*D. Penguin Bros. Ltd. v. City Nat'l Bank*
587 Fed. Appx. 663 (2d Cir. 2014) ........................................................................................ 9

*D'Addario v. D'Addario*
901 F.3d 80 (2d Cir. 2018)..................................................................................................... 6

*DDR Constr. Servs. v. Siemens Indus.*
770 F.Supp.2d 627 (S.D.N.Y. 2011) ...................................................................................... 3

*DiFolco v. MSNBC Cable, L.L.C.*
622 F.3d 104 (2d Cir. 2010)................................................................................................... 1

*DiVittorio v. Equidyne Extractive Indus.*
822 F.2d 1242 (2d Cir. 1987)................................................................................................ 19

*DLJ Mortg. Capital, Inc. v. Kontongiannis*
726 F.Supp.2d 225 (E.D.N.Y. 2010) ...................................................................................... 7

*Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*
No. 10-cv-5491, 2020 U.S. Dist. LEXIS 127591 (E.D.N.Y. July 20, 2020) .......................... 22

*Faulkner v. Beer*
463 F.3d 130 (2d Cir. 2006)................................................................................................... 2

*First Interregional Advisors Corp. v. Wolff*
956 F.Supp. 480 (S.D.N.Y. 1997) ........................................................................................ 16

*Forefront Mgmt., LLC v. Vergilis-Kalner*
No. 24-cv-8189, 2025 U.S. Dist. LEXIS 79337 (S.D.N.Y. Apr. 24, 2025) ............................... 6

*Global Network Commc'ns, Inc. v. City of New York*
458 F.3d 150 (2d Cir. 2006)................................................................................................... 2

*Global Switching Inc. v. Kasper*
No. CV-06-412, 2006 U.S. Dist. LEXIS 44450 (E.D.N.Y. June 29, 2006) ............................ 21

*Goldberg v. Mallinckrodt, Inc.*
792 F.2d 305 (2d Cir. 1986) ................................................................................................ 22

*Gov't Emps. Ins. Co. v. Akiva Imaging*
No. 1:24-CV-6549, 2025 U.S. Dist. LEXIS 95138 (E.D.N.Y. May 19, 2025) .......................... 7

*Gov't Emps. Ins. Co. v. Erlikh*
No. 16-CV-7120, 2019 U.S. Dist. LEXIS 34257 (E.D.N.Y. Feb. 28, 2019) *report and rec's adopted*, 2019 U.S. Dist. LEXIS 57885 (E.D.N.Y. Mar. 31, 2019) ........................................ 19

*Gov't Emps. Ins. Co. v. Landow*
No. 21-CV-1440, 2022 U.S. Dist. LEXIS 57715 (E.D.N.Y. Mar. 29, 2022) ........................... 20

*Gov't Emps. Ins. Co. v. Park Slope Med. and Surgical Supply, Inc.*
No. 11-CV-4028, 2013 U.S. Dist. LEXIS 135888 (E.D.N.Y. July 12, 2013) .......................... 19

*Government Emps. Ins. Co. v. Alrof, Inc.*
No. 11-CV-4028, 2013 U.S. Dist. LEXIS 135880 (E.D.N.Y. July 19, 2013) .......................... 18

*Government Emps. Ins. Co. v. Infinity Health Prods., Ltd.*
No. 10-CV-5611, 2012 U.S. Dist. LEXIS 58058 (E.D.N.Y. Apr. 6, 2012), *report and rec. adopted*, 2012 U.S. Dist. LEXIS 58060 (E.D.N.Y., Apr. 25, 2012) ........................................ 27

*Hemi Grp., LLC v. City of N.Y.*
559 U.S. 1 (2010) ............................................................................................................ 3, 4

JPMorgan Chase Bank v. Winnick
406 F.Supp.2d 247 (S.D.N.Y. 2005) .................................................................................. 23

Krys v. Pigott
749 F.3d 117 (2d Cir. 2014) ................................................................................................ 23

*Lama Holding Co. v. Smith Barney Inc.*
88 N.Y.2d 413 (N.Y. 1996) ................................................................................................ 22

*Lazich v. Vittoria & Parker*
189 A.D.2d 753 (2d Dept. 1993) ........................................................................................ 21

*Lerner v. Fleet Bank, N.A.*
459 F.3d 273 (2d Cir. 2006) ........................................................................................ 15, 24

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*
969 F.2d 1384 (2d Cir. 1992) ................................................................................................ 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*
797 F.3d 160 (2d Cir. 2015) ................................................................................................ 27

*Med. Marijuana, Inc. v. Horn*
604 U.S. 593 (2025) .......... 3

*Mills v. Polar Molecular Corp.*
12 F.3d 1170 (2d Cir. 1993) .......... 19

*Novak v. Kasaks*
216 F.3d 300 (2d Cir. 2000) .......... 19

Oster v. Kirschner
77 A.D.3d 51 (1st Dept. 2010) .......... 23, 24

*Pelczar v. Maimone*
No. 23-7283, 2024 U.S. App. LEXIS 28162 (2d Cir. Nov. 6, 2024) .......... 18

*Proctor v. LeClaire*
715 F.3d 402 (2d Cir. 2013) .......... 2

*Reves v. Ernst & Young*
507 U.S. 170 (1993) .......... 5, 10, 11

*Roosevelt Rd. Re, Ltd. v. Haggar*
No. 24-CV-1549, 2026 U.S. Dist. LEXIS 50451 (E.D.N.Y. Mar. 11, 2026) .......... 7, 8

*Schmuck v. United States*
489 U.S. 705 (1989) .......... 15

*Securiton Magnalock Corp. v. Schnabolk*
65 F.3d 256 (2d Cir. 1995) .......... 25

*Spool v. World Child Int'l Adoption Agency*
520 F.3d 178 (2d Cir. 2008) .......... 15

*State Farm Mut. Auto. Ins. Co. v. Grafman*
655 F.Supp.2d 212 (E.D.N.Y. 2009) .......... 27

*State Farm Mut. Auto. Ins. Co. v. Kalika*
No. 04 CV 4631, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. Mar. 16, 2006) .......... 10

*Sykes v. Mel Harris & Assocs., LLC*
757 F.Supp.2d 413 (S.D.N.Y. 2010) .......... 12, 26

*Tang Cap. Partners, LP v. BRC Inc.*
661 F.Supp.3d 48 (S.D.N.Y. 2023) .......... 27

*Uber Techs., Inc. v. Simon & Simon, P.C.*
No. 25-5365, 2026 U.S. Dist. LEXIS 103792 (E.D. Pa. May 11, 2026) .......... 5, 8, 13

*Uber Techs., Inc. v. Simon & Simon, P.C.*
No. 25-5365, 2026 U.S. Dist. LEXIS 233735 (E.D. Pa. Oct. 13, 2026) .......... 6

*Uber Techs., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP*
No. 25-CV-0522, 2026 U.S. Dist. LEXIS 182699 (E.D.N.Y. Aug. 14, 2026)........................ 7, 8

*United States v. Applins*
637 F.3d 59 (2d Cir. 2011) ........................................................................................... 9

*United States v. Bortnovsky*
879 F.2d 308 (2d Cir. 1989) ......................................................................................... 5

*United States v. Eisen*
974 F.2d 246 (2d Cir. 1992) ....................................................................................... 13

*United States v. Panza*
750 F.2d 1141, 1145 (2d Cir. 1984) ............................................................................. 9

*United States v. Trapilo*
130 F.3d 547 (2d Cir. 1997) ....................................................................................... 14

*United States v. United States Oncology, Inc.*
No. 19-cv-5125, 2023 U.S. Dist. LEXIS 159434 (Sept. 8, 2023) .............................................. 2

*Williams v. Affinion Group, LLC*
889 F3d 116 (2d Cir. 2018) ......................................................................................... 14

**Statutes**

18 U.S.C. § 1961, *et seq* ...................................................................................... passim

18 U.S.C. § 1962 ......................................................................................................... 3

FED. R. CIV. P. 12(b)(6) ............................................................................................... 1

FED. R. CIV. P. 8(a)(2) ........................................................................................ 9, 10, 15

FED. R. CIV. P. 9(b) .............................................................................................. passim

N.Y. Ins. Law § 403 ................................................................................................... 19

N.Y. JUD. LAW § 487 ............................................................................................ 25, 26

N.Y. Pen. Law § 176.05 .............................................................................................. 19

## I. INTRODUCTION

This Memorandum of Law is submitted on behalf of FedEx in opposition to the Memorandum of Law in Support of Ikhilov Defendants' Motion to Dismiss (the "Memo"). For the reasons articulated here and Plaintiff's Memoranda of Law in Opposition to Medical-Defendants' Motions to Dismiss, which are adopted and incorporated herein,[1] the Court should deny Ikhilov Defendants' Motion to Dismiss.

## II. ARGUMENT & AUTHORITIES

### *A. Legal Standard for 12(b)(6).*

FedEx adopts and incorporates Section II of the Joint Opposition.

### *B. The Court Should Disregard the Scher Declaration.*

Ikhilov Defendants ("Ikhilov") rely on the Declaration of Brett A. Scher (the "Declaration") and the exhibits attached to them – select legal filings from Claimants A-H's personal injury lawsuits – to controvert the Complaint's allegations (e.g., the purported identities of the Claimants A-H) and make legal arguments (e.g., the application of collateral estoppel) [Memo at 3-6, 7]. The Court should reject this improper and impermissible attack on the Complaint's allegations.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).[2] The Court may not consider the Declaration and the exhibits attached to it (Exhibits A-Q). They are not (1) attached to the Complaint as exhibits, (2)

---

[1] FedEx adopts and incorporates every argument in Parts I and II of Plaintiff's Opposition to Medical Defendants' Joint Memorandum of Law in Support of Motion to Dismiss (the "Joint Opposition").

[2] Unless otherwise specified, all internal quotations and citations for case citations are omitted.

clearly, definitely, or substantially referenced in the Complaint, or (3) heavily relied upon by the Complaint for their terms and effect. *United States v. United States Oncology, Inc.*, No. 19-cv-5125, 2023 U.S. Dist. LEXIS 159434, at *15 (Sept. 8, 2023); *see also Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Finally, the Court cannot take judicial notice of the exhibits because Ikhilov offers them for *their* truth of the matter asserted. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). At most, the Court can take notice Exhibits A-Q were filed in Claimant's A-H's personal injury lawsuits – not the factual or legal import that Ikhilov seeks to attach to the exhibits here.

***C. Collateral Estoppel Does Not Apply.***

"Collateral estoppel prevents a party from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Bouchard Transp. Co. v. Long Is. Light. Co.*, 807 F.App'x 40, 42 (2d Cir. 2020). Issue preclusion requires four elements: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012). A party seeking to apply collateral estoppel has the "burden of showing that the issues are identical and were necessarily decided in the prior action." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013).

Ikhilov argues FedEx is collaterally estopped from relitigating "fault or whether these Claimants allegedly staged their accidents" because "the issue of whether the accidents were *attributable* to the Claimants has already been squarely decided in most of the underlying actions" [Memo at 7] (emphasis added). But the "issue" that was purportedly decided in the underlying actions was whether the affirmative defense of comparative *negligence* applied to plaintiff-passengers. Here, the Complaint alleges Defendants conspired to, post-accident, "fabricate

injuries, and use[] falsified medical documentation to inflate claims" [Compl. ¶ 4] – none of which was decided in the underlying actions. Determining liability for negligence is not "identical" to determining whether injuries and medical documentation were manufactured after the alleged accidents occurred. Therefore, Ikhilov failed to carry its burden that collateral estoppel applies.

Even assuming *arguendo* the underlying actions had "necessarily decided" the issues alleged by Ikhilov, collateral estoppel still does not apply because some underlying actions remain pending. In other words, no "valid and final judgment on the merits" exists – at least in some cases.

***D. Defendants' Racketeering Proximately Caused FedEx's Damages.***

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9-10 (2010). "Standing under RICO requires that a plaintiff plead, at a minimum, (1) the defendant's violation of § 1962; (2) an injury to the plaintiff's business or property; and (3) causation of the injury by the defendant's violation.'" *DDR Constr. Servs. v. Siemens Indus.*, 770 F.Supp.2d 627, 649-50 (S.D.N.Y. 2011).

Here, the Complaint pleads Defendants' racketeering violated Sections 1962(c) and 1962(d) of RICO, which injured FedEx's business and property [Compl. ¶¶ 5, 141, 160, 198, 228, 252, 260, 264, 266, 269-73, Ex. B]. Loss of money has long been recognized as a form of injury to property for purposes of RICO. *See Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir.), *cert. denied*, 555 U.S. 970 (2008). This includes legal fees spent resisting a RICO scheme that includes out-of-court actions like the recruitment of claimants to stage accidents and falsely claiming injuries as alleged here [Compl. ¶¶ 4, 19, 156, 196, 226]. *Angermeir v. Cohen*, 14 F.Supp.3d 134, 153 (S.D.N.Y. 2014); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988). Accordingly, FedEx has been injured in its business or property. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025).

To satisfy causation, the plaintiff must show a RICO predicate offense was the "but for" cause and the proximate cause of the injury. *Hemi Grp.*, 559 U.S. at 9. Here, the Complaint alleges but for the submission, filing, and prosecution of fraudulent personal injury lawsuits by Defendants, FedEx would not have made SIR payments and would not have incurred expenses to defend the insureds and investigate, administer, and settle claims and lawsuits [Compl. ¶¶ 84, 290].

Proximate cause is satisfied when there is "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp.*, 559 U.S. at 9, 14. Here, FedEx plausibly alleges some direct relationship exists between FedEx's damages and Defendants' racketeering. As a named party in the Claimants' lawsuits [Memo at 3-6], FedEx was the direct target of the Fraud Scheme. As a self-insured entity (i.e., the insured), FedEx was directly damaged by the Fraud Scheme because it paid costs and expenses caused by Defendants' racketeering, such as (1) indemnity payments, (2) costs incurred defending lawsuits, and (3) costs and expenses of investigating, administering, and settling fraudulent claims [Compl. ¶¶ 5, 141, 160, 198, 228, 252, 260, 264, 266, 269-73]. FedEx made these payments because its "insurance program requires it to pay an SIR [self-insured retention] for bodily-injury and no-fault claims before any insurance carrier assumes responsibility." [Compl. ¶ 264]. FedEx's payment of inflated settlements and judgments and administrative, investigative, and legal expenses was directly caused by Defendants' manufacture and transmission of false legal and medical documentation that inflated claims against FedEx [Compl. ¶¶ 5, 92, 93, 141, 160, 198, 228, 252, 256, 260, 264, 266, 269-73, Ex. B]. This is sufficient for RICO standing. FedEx has "plausibly allege[d] a direct relation between the predicate acts and its injury . . . by alleging the lawyers and doctors manufactured and transmitted false medical materials to inflate claims against Uber and thereby caused Uber to incur

legal fees and inflated settlement costs." *Uber Techs., Inc. v. Simon & Simon, P.C.*, No. 25-5365, 2026 U.S. Dist. LEXIS 103792, at *57-58 (E.D. Pa. May 11, 2026) ("*Uber Simon*").

Ikhilov's arguments regarding RICO standing fail. First, Ikhilov attempts to minimize its involvement in the Fraud Scheme by stating the "only conduct attributed to them is the filing of pleadings in the underlying actions." But, for the reasons stated in *infra*, Ikhilov did much more than just file pleadings. Ikhilov acted as "a central coordinating attorney" that "occupied a gatekeeping position," including "directing the flow of fraudulent claims through [the] enterprise" [Compl. ¶ 14].

Ikhilov then attempts to minimize the damages attributed to it by stating the *itemized* expenses in the Complaint were never transmitted by it (e.g., the review and analysis of medical provider documents) and were submitted to non-party insurers. But the itemized expenses in the Complaint are merely examples of the expenses incurred by FedEx. They do not represent the totality of the damages alleged by FedEx, which include SIR payments for litigation costs and expenses directly caused by Ikhilov's filing and prosecution of lawsuits. The fact that medical expense claims were not directly transmitted by Ikhilov and sent to non-party insurers is immaterial to determining if Ikhilov committed mail and wire fraud by "causing" the transmissions to occur. *United States v. Bortnovsky*, 879 F.2d 30, 38 (2d Cir. 1989). It was reasonably foreseeable that the filing and prosecution of lawsuits by Ikhilov would cause Medical-Defendants to transmit medical expense claims that supported and enabled the lawsuits to exceed the No-Fault statute's threshold for lucrative damages [Compl. ¶¶ 88-89, 141, 198, 228, 241, 258, 260]. And therein lies the rub: because Ikhilov participated in the operation or management of the enterprise, Ikhilov is liable for its damages. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

Ikhilov's argument that FedEx's claim for a reimbursement "for indemnity payments and payments made for some of the medical treatment" [Compl. ¶ 270] to Progressive is a "derivative, pass-through injury" belies the fact that FedEx made those payments with its own money. This same argument was rejected by the Eastern District of Pennsylvania in a similar case involving Uber and FedEx. There, the Court noted "[w]hen a defendant's insurer in the underlying case is the mere conduit through which a plaintiff collects payment for a fraudulent underlying claim, the defendant insured has standing in an ensuing racketeering lawsuit." *Uber Techs., Inc. v. Simon & Simon, P.C.*, No. 25-5365, 2026 U.S. Dist. LEXIS 233735, at *12 (E.D. Pa. Oct. 13, 2026). Here, the same rationale and conclusion applies.

Finally, Ikhilov's argument that FedEx's injury is based on a series of "independent decisions" is pure speculation outside the Complaint's allegations. As such, it should be rejected. Further, some of the "independent decisions" Ikhilov cites are the actions of its *co-conspirators*. Permitting Defendants to rely on each other's actions as contingencies that make FedEx's injuries indirect is a recipe for the creation of a bullet-proof RICO scheme. Further, "[t]he mere fact that a party's injury was contingent on the actions of third parties does not render that injury indirect." *Forefront Mgmt., LLC v. Vergilis-Kalner*, No. 24-cv-8189, 2025 U.S. Dist. LEXIS 79337, at *10 (S.D.N.Y. Apr. 24, 2025); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008); *Alix v. McKinsey & Co.,* 23 F.4th 196 (2d Cir. 2022).

***E. FedEx's Damages are Ripe.***

Litigation expenses a plaintiff incurs combatting RICO schemes in state court actions are ripe – irrespective of the ripeness of other damages. In *D'Addario v. D'Addario*, 901 F.3d 80, 96 (2d Cir. 2018), the Second Circuit held an heiress's legal expenses in state court proceedings to combat her brother's RICO violations were "a 'clear' and 'definite' loss" because "[a]lthough the amounts may increase over time, the past expenses will not disappear . . ." *Id.; see also Bankers*

*Trust Co.*, 859 F.2d at 1105-06 (holding incurred litigation expenses are ripe but future legal fees are not ripe and may be supplemented "up to the time of trial"); *Gov't Emps. Ins. Co. v. Akiva Imaging*, No. 1:24-CV-6549, 2025 U.S. Dist. LEXIS 95138, at *10 (E.D.N.Y. May 19, 2025).

Here, the Complaint alleges FedEx incurred litigation expenses because of the lawsuits filed and prosecuted by Defendants [Compl. ¶¶ 252, 260, 264, 266, 269, 273]. These expenses are ripe because they have been spent and will not disappear.

Ikhilov argues FedEx's damages are "not clear and definite" because two exemplar Claimant lawsuits remain pending. But, that argument is unavailing for the reasons stated *supra*.

Furthermore, Ikhilov utterly fails to address the other damages alleged in the Complaint: FedEx's indemnity payments and costs and expenses of investigating, administering, and settling fraudulent claims. Those payments and costs and expenses *are* ripe because they have been already paid or incurred. *See e.g., Allstate Ins. Co. v. Lyons*, 843 F.Supp.2d 358, 374 (E.D.N.Y. 2012). The case cited by Ikhilov, *DLJ Mortg. Capital, Inc. v. Kontongiannis*, 726 F.Supp.2d 225 (E.D.N.Y. 2010), fits into the category of cases where the alleged losses might be eliminated *entirely*, such as an uncollectible debt. That situation does not apply here.

### ***F. The Complaint Sufficiently Pled RICO Violations.***

#### **1. The Complaint Sufficiently Alleges an Association-in-Fact Enterprise.**

In addition to the arguments made in Section II.C.1. of the Joint Opposition, FedEx responds as follows.

Contrary to Ikhilov's suggestion [Memo at 11-12], neither *Roosevelt Rd. Re, Ltd. v. Haggar*, No. 24-CV-1549, 2026 U.S. Dist. LEXIS 50451 (E.D.N.Y. Mar. 11, 2026) (hereinafter, "*Haggar*") nor *Uber Techs., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP*, No. 25-CV-0522, 2026 U.S. Dist. LEXIS 182699 (E.D.N.Y. Aug. 14, 2026) (hereinafter, "*Uber*") command a different result. For starters, in *Haggar*, Judge Gershon's decision was based on

observation that the complaint lacked any facts "suggesting the sort of interpersonal interactions necessary to make out a RICO enterprise." *Haggar*, 2026 U.S. Dist. LEXIS 50451, at *44-45. Not only are the Complaint's allegations discussed above vastly different and far more developed that those in *Haggar*, Ikhilov ignores that Judge Gershon granted leave to amend, which cuts against the sort of per se futility argument Ikhilov suggests should apply in this case. *See id.* Similarly, the *Uber* decision was based on Judge Merchant's analysis of the allegations in *that specific* complaint. *See Uber*, 2026 U.S. Dist. LEXIS 182699, at *13-14 & n.6 (explaining that the complaint allegations were conclusory and contained limited examples). In contrast, the Complaint contains detailed allegations establishing an ongoing coordinated, symbiotic relationship, purpose, and scheme where Defendants shared a common purpose and shared in the proceeds of the Fraud Scheme. *See Uber Simon*, 2026 U.S. Dist. LEXIS 103792, at *57-58 (holding that such "allegations plausibly plead an enterprise functioning as a continuing unit and involving interpersonal relationships and a common interest") (cleaned up).

Ikhilov's suggestion the treatment chronologies "confirm the absence of any 'rim'" [Memo at 12] ignores that the chronologies demonstrate both recurring methods and sequence [Compl. ¶¶ 35, 43, 51, 73, 81-94, 89, 97-224, 232-260, Ex. B]. What's more, Ikhilov downplays the significant overlap and coordination among Defendants. Ikhilov played a critical role in coordinating claims A through H. Other Defendants recur within and across Claimant groups, including Apazidis and Total Orthopaedics in Claims A, B, and G; Cean and the associated pain-management participants in Claims A through C; Kaisman in Claims D through F; Bay Ridge and Murray in Claims D, E, G, and H; and King and the King P.C. in Claims C and H [Compl. ¶¶ 97-224]. It is not necessary that each medical provider treated *every* claimant or communicated with one another. *See United*

*States v. Panza*, 750 F.2d 1141, 1145 (2d Cir. 1984).[3] Differences in who treated the Claimants was based on the type of injury alleged, which were a feature of the Fraud Scheme, not proof of a rimless enterprise.

This interdependence suffices to plead a continuing unit functioning with a common design. *See United States v. Applins*, 637 F.3d 59, 74 (2d Cir. 2011). Unlike *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 Fed. Appx. 663 (2d Cir. 2014), upon which Ikhilov relies, the Complaint does not allege a collection of parties independently pursuing unrelated economic interests. Instead, it alleges Defendants' financial success depended upon one another's participation in the Fraud Scheme. The attorneys needed the providers' diagnoses, treatment records, imaging studies, and anticipated testimony; the providers benefited from recurring referrals and litigation generated by the attorneys; and the value of the underlying claims depended upon the coordinated actions of each participant [Compl. ¶¶ 86, 88, 230-31, 240, 248, 253-57].

The Court must accept these allegations as true regardless of any skepticism or competing interpretation offered by Ikhilov. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (choosing between plausible inferences is the factfinder's role, not a court's). This remains true despite Ikhilov's improper reliance on declaration testimony, as stated *supra*, regarding the scope of their representation of the claimants [Memo at 14]. *See* FED. R. CIV. P. 8(a)(2); *see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir. 1992). And even if considered, the mere fact that another attorney filed a pleading does not negate the Complaint's allegations or conclusively rule out Ikhilov's joint representation or involvement.

[3] Although the Complaint adequately alleges Defendants interacted and communicated with one another to withstand a motion to dismiss, information regarding the exact manner by which Defendants communicated and interacted with one another is within the control and possession of Defendants (not FedEx) and requires discovery to ascertain.

**2. The Complaint Adequately Alleges Ikhilov Participated in the Enterprise.**

For the reasons stated in Section II.C.1. of the Joint Opposition, the Complaint adequately pled an association-in-fact. To show a defendant's "participation" in a RICO enterprise, a plaintiff need only demonstrate the defendants played *some* part in the operation of the enterprise – even if not the predominant one. *Reves*, 507 U.S. at 179. A defendant's participation in an enterprise need only satisfy the notice pleading requirement of Rule 8(a). *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 CV 4631, 2006 U.S. Dist. LEXIS 97454, at * 45 (E.D.N.Y. Mar. 16, 2006).

As explained above, the Complaint is replete with allegations detailing Ikhilov's participation and control over the association in fact [Compl. ¶¶ 232-38, 242-48]. These are not "threadbare recitals," as Ikhilov claims. The Complaint alleges Ikhilov directed the enterprise's affairs by selecting which claims would be advanced, *which providers would be used*, and when and where tort litigation would be initiated and by exercised decision-making authority over whether claims were pursued and controlling pleadings, discovery posture, and settlement demands [Compl. ¶¶ 232-38, 242-48].

Ikhilov's reliance on *Reves* and *Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) is misplaced. Unlike the accountants in *Reves* and attorneys in *Azrielli*, the Complaint alleges Ikhilov exercised decision-making authority over other enterprise participants. The Complaint specifically alleges Ikhilov selected which providers would treat particular claimants, determined when and where litigation would be filed, controlled settlement demands, and directed how claims progressed through the treatment and litigation pipeline [Compl. ¶¶ 14-15, 242-43]. These allegations concern the management of the enterprise itself and go far beyond the practice of law.

Nor do the Complaint's allegations "affirmatively refute" any claim that Ikhilov directed the affairs of the Medical-Defendants [Memo at 16]. For example, in suggesting each medical

provider exercised its "*own* decision-making authority at every step of the Fraudulent Treatment Protocol," Ikhilov selectively quote isolated allegations of the Complaint while ignoring others. But the Complaint repeatedly alleges medical treatment occurred "[u]nder the direction of Ikhilov" and provider selection was controlled by Ikhilov [Compl. ¶¶ 14-15, 118, 155, 195, 224, 242-43]. At the pleading stage, those allegations must be accepted as true.

Likewise, the timing of treatment for Claimants A, B, and C does not undercut the Complaint's allegations. First, the fact the Complaint based Ikhilov's engagement date upon the date of a HIPAA form does not affirmatively exclude Ikhilov's representation or involvement prior to that date. In fact, the Complaint alleges Ikhilov *was* involved in the selection of the medical providers for those claimants [Compl. ¶¶ 14-19, 89, 232-43, 253]. Second, *Reves* makes clear that one need only have "*some* part in directing the enterprise's affairs" to have RICO liability. *Reves*, 507 U.S. at 179. The Complaint alleges Ikhilov selected the provider network, initiated the lawsuits, coordinated referrals, generated litigation filings, and advanced claims through critical stages of the Fraud Scheme [Compl. ¶¶ 14-19, 89, 232-43, 253]. This is sufficient to allege Ikhilov's participation and control over the enterprise.

**3. The Complaint Adequately Alleges Ikhilov Committed a Pattern of Racketeering Activity.**

In addition to the argument and authorities set forth in Section II.C.3. of the Joint Opposition, FedEx responds as follows.

**a. <u>There is no per se rule excluding litigation activities from serving as RICO as predicate acts.</u>**

Courts in this District and the Second Circuit have held the use of mail and wires in filing legal documents in support of a scheme to defraud *can* constitute RICO predicate acts when the scheme involves more than just litigation activities associated with a *single* underlying lawsuit. *Kim v. Kimm,* 884 F.3d 98, 104, 105 (2d Cir. 2018) (holding when the defendant "engaged in a

*single* frivolous, fraudulent, or baseless lawsuit," litigation activity *alone* could not constitute a viable RICO predicate act – i.e., "litigation activities—*without more*—cannot constitute a RICO predicate act") (emphases added); *see also Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413, 418-20, 425 (S.D.N.Y. 2010) (denying defendants' motion to dismiss plaintiffs' 1962(c) claims when defendants used litigation to carry out a "massive" scheme and engaged in a variety of out-of-court actions to further the activity); *Carroll v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605 (N.D.N.Y. Nov. 30, 2020) (finding plaintiff pled plausible a civil RICO claim when defendants, among other things, filed thousands of lawsuits to carry out an expansive fraud scheme and committed acts that were external to the individual suits in state courts or went beyond proper legal representation).

Here, the Complaint alleges Defendants implemented a scheme that extended well beyond litigation activity alone. It alleges dozens of predicate acts occurring over nearly a decade and involving repeated fraudulent submissions by numerous medical and legal participants [Compl. Ex. B]. Defendants implemented the Fraud Scheme by (1) using runners to recruit claimants to stage fake automobile accidents, (2) directing the claimants to seek unnecessary medical diagnosis and treatment from medical providers who provided fraudulent medical diagnoses, treatments, and records, (3) directing the claimants to obtain high-interest funding loans from litigation funding companies, (4) using fraudulent medical reports and medical procedures to artificially inflate the settlement values of the claimants' personal injury lawsuits, and (5) sharing the proceeds from the high-interest funding loans provided to claimants by litigation funding companies [Compl. ¶¶ 4, 81-95, 156, 196, 226, 229-60, 324]. These actions were coordinated conduct that occurred before, during, and outside litigation. The filing and service of lawsuits was *one* component of the scheme that helped to monetize it; the filings were not the entirety of the scheme and were predicated on

independently actionable conduct – the repeated use of the mail and wires to transmit fraudulent legal and medical records [Compl. ¶¶ 15, 18, 81-95, 156, 196, 226, 229-60, 324, Ex. B]. These are precisely the type of allegations of an expansive fraudulent scheme that *Kim* distinguished and that transform litigation activities into predicate acts. *See Kim*, 884 F.3d at 104-05; *see Uber Simon*, 2026 U.S. Dist. LEXIS 103792, at *47-55.

Ikhilov's reliance on *Brock v. Zuckerberg* is unavailing, as the RICO claim in that case was based on a motion to transfer the case to another venue pursuant to the forum selection clause in Facebook's Terms of Service. *See* No. 20-cv-7513, 2021 U.S. Dist. LEXIS 119021, at *4, 15-16 (S.D.N.Y. June 25, 2021). Whereas this lawsuit is analogous to cases in which the courts found that litigation activities <u>did</u> support a plausible civil RICO claim because the Fraud Scheme involved a significant number of lawsuits and relied on more than just litigation activities to further the Fraud Scheme – both of which the Complaint alleges here. *See e.g., United States v. Eisen*, 974 F.2d 246, 251-54 (2d Cir. 1992) (mail and wire fraud violations arising out of scheme by law firm to deprive civil defendants and their liability insurers of money through the filing of fraudulent lawsuits, bribery and intimidation of witnesses and the creation of false photographs, documents and physical evidence of accidents for use before and during trial could be RICO predicate act).

The activities alleged in the Complaint include far more than "routine litigation activities" and are not isolated to a single or even several lawsuits but involve many more. The Complaint alleges Defendants engaged in a "concerted abuse of the legal system" that makes their litigation activities predicate acts. *Carroll*, 2020 U.S. Dist. LEXIS 258605, at *31. In *Kim*, the Second Circuit expressly declined to hold that all RICO actions based on litigation activity could not proceed. *Id.* at 105. The allegations here clearly fall within *Kim*'s "something more" so as to constitute predicate acts. This is a case where there are many more fraudulent lawsuits, of which

the exemplar claims are just a small portion. Nor does this case implicate the policy concerns cited in *Kim*. Holding Defendants liable for the Fraud Scheme will not transform every unsuccessful lawsuit into a racketeering claim or retaliatory action. Res judicata does not apply. The RICO Claims depend on the existence of an alleged scheme, the participation and roles of the Defendants, and the use of the mail and the wires – none of which were applicable or resolved in the underlying personal injury lawsuits.

**b. The Complaint alleges mail and wire fraud with the requisite particularity.**

The Second Circuit has held:

> The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires. The gravamen of the offense is the scheme to defraud. A "scheme to defraud" is "a plan to deprive a person of something of value by trick, deceit, chicane or overreaching. To make out such a scheme, a plaintiff must provide proof of a material misrepresentation.

*Williams v. Affinion Group, LLC*, 889 F3d 116, 124 (2d Cir. 2018). The term "scheme to defraud" is a non-technical term reflecting fundamental notions of honesty, fair play, and right dealing. *United States v. Trapilo*, 130 F.3d 547, 550 (2d Cir. 1997). To allege "use of interstate mails," a plaintiff need only allege that the scheme was such that use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even though not actually intended. *Allstate Ins. Co. v. CPM Med. Supply Inc.*, No. 23-CV-5864, 2024 U.S. Dist. LEXIS 153880, at *19 (E.D.N.Y. 2024).

Similarly, "in a wire fraud case, the [plaintiff] must prove the use of interstate wire communications in furtherance of the scheme to defraud." *Boritzer v. Calloway*, No. 10 Civ. 6264 (JPO), 2013 U.S. Dist. LEXIS 11119, at *18 n. 3 (S.D.N.Y. Jan. 24, 2013). Like mail fraud, "[i]t is not necessary, however, to prove that the defendant himself personally performed the fraudulent

wire transfer in order to satisfy the element of causing a wire transmission in furtherance of the fraudulent scheme." *Id.* "Rather, this element can be satisfied by showing that the defendant acted with knowledge that a wire transfer would follow in the ordinary course of business or that such use could reasonably] be foreseen." *Id.*

Rule 9(b) requires mail and wire fraud to be pled with particularity. FED. R. CIV. P. 9(b). To meet this heightened pleading standard, the complaint must identify "the contents of the communications, who was involved, and where and when they took place, and explain why they were fraudulent." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). Rule 9(b) must be read together with Rule 8(a), which requires plaintiffs to plead only "a short, plain statement upon which plaintiffs are entitled to relief." *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-04-2934, 2005 U.S. Dist. LEXIS 29666, at *33 (E.D.N.Y. Feb. 22, 2005). Further, the complaint must allege facts that give rise to a strong inference of fraudulent intent by showing defendants had both motive and opportunity to commit fraud or allege facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).

"[A] mailing that is incident to an essential part of the scheme, satisfies the mailing element of the mail fraud offense." *Schmuck v. United States*, 489 U.S. 705, 712 (1989). Ikhilov argues the mail and wire fraud allegations are conclusory because they fail to "describe the challenged statements within the subject litigation documents and offers no explanation as to how the specific statements were supposedly fraudulent" [Memo at 18]. But in cases where plaintiffs allege that the mails or wires were "simply used in furtherance of a master plan to defraud, the mailings need not contain fraudulent information, and a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications is sufficient to satisfy Rule 9(b)."

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 177 (E.D.N.Y. 2010). In such cases, Rule 9(b) requires "adequate particularity in the body of the complaint [as to] the specific circumstances constituting the overall fraudulent scheme." *Curtis & Assocs*., 758 F.Supp.2d at 177. This is especially true when the sufficiency of the complaint is being considered *before* discovery has taken place, the "information is exclusively in the possession of those participating in the fraud," and the RICO case is complex and involves multiple defendants – all of which are present here. *First Interregional Advisors Corp. v. Wolff*, 956 F.Supp. 480, 486 (S.D.N.Y. 1997); *AIU Ins.* 2005 U.S. Dist. LEXIS 29666, at *37.

Here, the Complaint pleads: (1) the existence of a racketeering scheme by Defendants to defraud FedEx and others of money [Compl. ¶¶ 3-4, 6, 17, 18, 81, 86, 89, 95, 96, 118, 141, 155, 198, 225, 228]; (2) Defendants' use of the mail and wires in furtherance of their scheme [Compl. ¶¶ 5, 88, 91-93, 140-41, 197-98, 227-28, 241, 250, 258, 269, 270, Ex. B]; and (3) Defendants' intent to defraud by devising, abetting, or participating in the racketeering scheme [Compl. ¶¶ 4-6, 12-79, 81-267]. Defendants shared the common purpose to defraud FedEx of its money and property, and they worked together to achieve that goal [Compl. ¶¶ 86, 229, 231, 289].

The Complaint alleges each 1962(c) Defendant committed at least two predicate acts and Defendants collectively committed at least 67 predicate acts of mail and wire fraud in furtherance of the Fraud Scheme [Compl. Ex. B]. The predicate acts of mail and wire fraud include: (1) Ikhilov's electronic submission and filing and/or mailing of documents (e.g., Verified Bills of Particular), which contained false and fraudulent allegations about a claimant's accident, injuries, and medical treatment, to New York state courts and FedEx (mail and wire fraud) [Compl. Ex. B] (the "Legal Filings and Mailings")] and (2) Medical-Defendants' emailing, faxing, and/or mailing of documents to that contained false information regarding the cause or extent of a claimants'

injuries and/or the need for, request to provide, or seek payment for medical treatment to treat the alleged injuries (mail and wire fraud) (the "Medical Transmissions") [Compl. Ex. B].

The Complaint does not merely identify categories of communications; it provides concrete examples. For instance, the Complaint alleges Ikhilov filed and transmitted litigation documents containing representations regarding accident causation, injury severity, and medical necessity that were allegedly contradicted by objective medical evidence [Compl. ¶¶ 118-39, 155-80, 195-222, 225-28, Ex. B]. Likewise, the Complaint identifies specific medical reports, imaging records, operative reports, and treatment records that allegedly omitted material preexisting conditions, exaggerated accident-related injuries, or otherwise misrepresented the necessity of treatment [Compl. ¶¶ 103-17, 133-38, 166-77, 208-15, 254-60].

Exhibit B appended to the Complaint enumerates at least 67 discrete predicate acts of mail and wire fraud that state: (1) the contents of the communications and why they were fraudulent (e.g., the Legal Filings and Mailings and the Medical Transmissions contained false and fraudulent allegations related to a claimant's accident, injuries, and medical treatment); (2) who was involved (i.e., Defendants themselves or those acting at their direction); and (3) the dates when the communications occurred [Compl. Ex. B]. "This level of specificity satisfies the heightened pleading requirement of Rule 9(b)." *CMG Holdings Grp. v. Wagner*, No. 15-CV-5814 (JPO), 2016 U.S. Dist. LEXIS 121135, at *10 (Sept. 7, 2016).

Contrary to Ikhilov's suggestion, the Complaint alleges how the 67 discrete predicate acts contained fraudulent misstatements. For example, the Complaint alleges Defendant King's evaluation of Claimant C's right knee revealed his injury was caused by an alleged car accident and he had no record of prior injury to that knee [Compl. ¶ 136]. On that basis, Defendant King performed right knee surgery on Claimant C and then submitted a bill for the surgery [Compl. ¶

138]. The problem is neither of those facts were true – MRI records that Defendant King reviewed prior to performing surgery on Claimant C showed (1) Claimant C's right knee had been injured prior to the alleged accident and (2) a meniscal tear was not present approximately four months after the date of the alleged accident. But the operative and examination records submitted by Defendant King (and then by Ikhilov) regarding the surgery omitted and misrepresented these salient facts [Compl. ¶¶ 134-38, Ex. B, p. 11]. In another example, an IME performed *four weeks* after Claimant A's alleged accident revealed "a lack of clinical correlation . . . necessary to justify fusion" [Compl. ¶ 115]. Yet, Stand Up produced a report of an MRI that it performed of Claimant A's cervical spine approximately *four years* after Claimant A's alleged accident that purportedly revealed injuries to Claimant A's neck and spine, which were then used to justify spinal fusion surgery performed by Defendant Apazidis [Compl. ¶¶ 114, 115].

The Complaint establishes a "strong inference" of fraudulent intent, which may be alleged generally, by (a) showing Defendants had both motive and opportunity to commit fraud and (b) Defendants' actions constituted strong circumstantial evidence of conscious misbehavior or recklessness. FED. R. CIV. P. 9(b); *Pelczar v. Maimone*, No. 23-7283, 2024 U.S. App. LEXIS 28162, at *2 (2d Cir. Nov. 6, 2024)).

"Motive can be proved by showing that concrete benefits could be realized by one or more of the alleged misrepresentations or omissions. Opportunity can be proved by a showing of the means and likely prospect of achieving concrete benefits by the means alleged." *Gov't Emps. Ins. Co. v. Alrof, Inc.*, No. 11-CV-4028, 2013 U.S. Dist. LEXIS 135880, at *11 (E.D.N.Y. July 19, 2013). The Complaint sufficiently alleges Defendants had a motive – the receipt of "concrete benefits" (payments for false medical reports and unnecessary medical services, the receipt of proceeds of high-interest funding loans provided by to the claimants, and patient referrals that

Medical-Defendants received for such conduct) – and an opportunity to commit fraud by providing false medical records and unnecessary medical treatment and seeking reimbursement for those unnecessary medical services via fraudulent personal injury lawsuits [Compl. ¶¶ 4, 19, 86, 88, 102, 156, 176, 196, 211, 226, 230, 240, 248, 252, 254, 260, 264, 268-73]. *Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120, 2019 U.S. Dist. LEXIS 34257, at *16 (E.D.N.Y. Feb. 28, 2019) *report and rec's adopted*, 2019 U.S. Dist. LEXIS 57885 (E.D.N.Y. Mar. 31, 2019) (stating defendants had "strong motive to receive monetary reimbursements to which they were not entitled, and they had the opportunity and ability to receive those reimbursements by submitting fraudulent claims to GEICO"); *see also Lyons*, 843 F.Supp.2d at 373.

Additionally, the Complaint's allegations indicate strong circumstantial evidence of conscious misbehavior. The Complaint alleges Defendants knew the legal documents and medical reports contained false information to induce reliance by FedEx [Compl. ¶¶ 261-67]. The submission of misleading documentation to an insurer for purposes of obtaining benefits is deliberate illegal behavior under New York law. *See* N.Y. Pen. Law § 176.05 (defining insurance fraud); N.Y. Ins. Law § 403 (defining fraudulent insurance act). This is strong circumstantial evidence of Defendants' conscious misbehavior and is more than sufficient to allege a strong inference of intent "generally." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000); *see also Gov't Emps. Ins. Co. v. Park Slope Med. and Surgical Supply, Inc.*, No. 11-CV-4028, 2013 U.S. Dist. LEXIS 135888, at *15 (E.D.N.Y. July 12, 2013).

Ultimately, the Complaint's predicate acts "inform each defendant of the nature of his alleged participation in the fraud." *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). This is sufficient to satisfy 9(b). *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987). "Consistent with the purpose of Rule 9(b), Defendants are sufficiently on

notice as to the nature of the scheme, when it occurred, and who took part." *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440, 2022 U.S. Dist. LEXIS 57715, at *17 (E.D.N.Y. Mar. 29, 2022). "In a complex RICO suit, this is enough." *Id*.

### *G. The Complaint Properly Alleges a RICO Conspiracy.*

For the reasons set forth in Section II.D. of the Joint Opposition, the Complaint properly alleges a RICO conspiracy against Ikhilov.

### *H. The Complaint Properly Alleges a Common Law Fraud Claim.*

For the reasons set forth in Sections II.E. and II.G. of the Joint Opposition, the Complaint properly alleges a common law fraud claim against Ikhilov.

Ikhilov argues the Complaint fails to allege they knowingly made misrepresentations in the litigation documents with the intent to deceive because they (1) "did not witness the underlying motor vehicle accidents involving their Claimant clients," (2) "are not doctors," and (3) the Complaint's allegations are "entirely conjectural" [Memo at 20]. But Ikhilov filed, among other things, *verified* Complaints and Bills of Particulars [Compl. ¶¶ 89, 140, 197, 227, Ex. B, pp. 4, 8, 14-16, 18, 19, 21] the Claimants' accidents were "*bona fide* accidents and [the Claimants'] claimed injuries were genuine, accidental, and medically necessary" [Compl. ¶ 262]. In other words, Ikhilov signed sworn statements under penalty of perjury declaring the facts and allegations in the Claimants' lawsuits were true and correct. Ikhilov's arguments they did not witness the accidents or are not doctors are not only contradicted by the Complaint's allegations but abdicate their ethical and professional responsibilities to the Court and other parties. The Court should reject this.

Ikhilov also argues FedEx could not have justifiably lied on their statements because they were made by an opposing party's attorney during adversarial proceedings and the underlying actions were contested [Memo at 20]. But this argument fails for three reasons.

One, as articulated in Section II.B.3. of the Joint Opposition, Courts in this Circuit have routinely held a party can justifiably rely on misrepresentations that appear "facially valid" when making insurance payments and incurring expenses. *See Allstate Ins. Co. v. Halima*, No. 06-CV-1316, 2009 U.S. Dist. LEXIS 22443, at *24 (E.D.N.Y. Mar. 19, 2009) *AIU Ins.*, 2005 U.S. Dist. LEXIS 29666, at *46-47. Two, Ikhilov attested to the veracity of the cause and nature of the Claimants' injuries under penalty of perjury. Three, "[i]t is reasonable where . . . the adversary is in sole possession of certain factual information, and it would be difficult or impossible to verify the information, for a plaintiff to rely on factual representations by an adversary." *Global Switching Inc. v. Kasper*, No. CV-06-412, 2006 U.S. Dist. LEXIS 44450, at *44 (E.D.N.Y. June 29, 2006); *see also Allenby, LLC v. Credit Suisse AG*, 134 A.D.3d 577, 580 (1st Dept. 2015). "[H]ere, the facts misrepresented were peculiarly within Defendants knowledge, including the staging of collisions, coordination among claimants, and fabrication of injuries." [Compl. ¶ 263].

In the cases cited by Ikhilov, justifiable reliance was lacking because a plaintiff's fraud claim relied on another party's legal opinions or conclusions or on another law firm's actions that were "fully controverted in an adversarial proceeding." *Cascardo v. Stacchini*, 100 A.D.3d 675 (2d Dept. 2012); *Lazich v. Vittoria & Parker*, 189 A.D.2d 753 (2d Dept. 1993) . Neither situation is present here. FedEx relied on the veracity of the *allegations* in the Claimants' lawsuits. The allegations were neither Ikhilov's legal opinions nor its conclusions. Moreover, the issue of justifiable reliance generally implicates questions of fact that should not be resolved at this stage in the proceedings. *DDJ Mgt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 155 (2010); *see also Knight Secs., L.P. v. Fiduciary Trust Co.*, 5 A.D.3d 172, 173 (1st Dept. 2004).

Finally, contrary to Ikhilov's assertion, the Complaint alleges FedEx suffered direct damages as a result of their fraud. Under New York law, a plaintiff may recover out-of-pocket

expenses. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996). This includes the reasonable value of attorney's fees and other expenses when, "through the wrongful act of his present adversary, [the plaintiff was] involved in earlier litigation with a third person in bringing or defending an action to protect his interests . . ." *Coopers & Lybrand v. Levitt*, 52 A.D.2d 493, 496 (1st Dept. 1976); *see also Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*, No. 10-cv-5491, 2020 U.S. Dist. LEXIS 127591, at *15 (E.D.N.Y. July 20, 2020). These damages must be "the direct, immediate, and proximate result of the fraudulent misrepresentation." *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 307 (2d Cir. 1986).

Here, the Complaint sets out two ways in which FedEx was injured: by making SIR payments for fraudulent medical services and settlements and judgments and by incurring costs in defending Claimants' lawsuits. FedEx's SIR payments on claims for medically unnecessary services that were made in reliance on fraudulent misrepresentations is a widely accepted form of direct damages. *See Halima*, 2009 U.S. Dist. LEXIS 22443, at *25. Similarly, FedEx's litigation expenses are direct damages because Defendants filed fraudulent lawsuits in the name of third parties (the Claimants), which forced FedEx to incur litigation costs and expenses defending these lawsuits [Compl. ¶¶ 252, 260, 266]. As a result, these costs and expenses are direct damages that were the proximate and natural consequence of Ikhilov's fraudulent acts [*Id.*].

### ***I. The Complaint Properly Alleges an Aiding-and-Abetting Fraud Claim.***

"To establish liability for aiding and abetting fraud under New York law, the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Krys v. Pigott*, 749

F.3d 117, 127 (2d Cir. 2014). Ikhilov challenges the second and third elements – their knowledge of the Fraud Scheme and provision of substantial assistance to the further it [Memo at 21-22].

"Actual knowledge need only be pleaded generally, cognizant, particularly at the pre-discovery stage because the plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind." *Oster v. Kirschner*, 77 A.D.3d 51, 55 (1st Dept. 2010). Accordingly, actual knowledge of the fraud is discerned from the "surrounding circumstances" and "may be averred generally," which is satisfied when plaintiffs "plead the events which give rise to an inference of knowledge." *Id.*; *Krys*, 749 F.3d at 129.

Here, the "surrounding circumstances" described in the Complaint permit the reasonable inference that Ikhilov actually knew of the Fraud Scheme. The Complaint alleges Ikhilov "operated as a central coordinating attorney" and in a "gatekeeping position [], selecting which claims would be advanced, which providers would be used, and where and where litigation would be initiated, thereby directing the flow of fraudulent claims through such enterprise." [Compl. ¶¶ 14-15, 19, 89, 231, 242-43, 253]. The Complaint further alleges Ikhilov directed the medical treatments and services provided to the Claimants by Medical-Defendants [Compl. ¶¶ 118, 155, 195, 224, 227]. Finally, the Complaint alleges Ikhilov filed and transmitted the legal documents necessary to prosecute the Claimants' personal injury lawsuits and received proceeds from the Claimants' litigation funding loans [Compl. ¶¶ 140, 196-197, 226]. As the "central coordinating authority" of the Fraud Scheme, it is more than reasonable to infer Ikhilov had actual knowledge of the Fraud Scheme.

Substantial assistance constitutes "a substantial contribution to the perpetration of the fraud." *JPMorgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 257 (S.D.N.Y. 2005). It exists "when a defendant affirmatively assists, helps conceal or fails to act when required to do so,

thereby enabling the [fraud] to occur." *Lerner*, 459 F.3d at 295. Substantial assistance can be inferred from the circumstances alleged in the complaint. *Oster*, 77 A.D.3d at 55-56. A defendant who provides the means by which the perpetrators of a fraud carry out their scheme can be found to have substantially assisted the perpetrators. *Id.*

The Complaint adequately pled Ikhilov provided substantial assistance to the Fraud Scheme by "coordinating initial intake; selecting providers, timing and filing of pleadings; transmitting no fault documentation, medical records, HIPAA authorizations, and litigation filing to Plaintiff and others for the purpose of supporting insurance claims and obtaining insurance proceeds" [Compl. ¶ 89]. The Complaint further alleges Ikhilov directed the medical treatments and services provided to the Claimants by Medical-Defendants [Compl. ¶¶ 118, 155, 195, 224, 227]. These actions undoubtedly constitute substantial assistance to the Fraud Scheme. *See, e.g., Carbon Inv. Partners, LLC v. Bressler*, No. 20 Civ 3617, 2021 U.S. Dist. LEXIS 166293, at *25-26 (S.D.N.Y. Sept. 1, 2021).

***J. The Unjust Enrichment Claim Does Not Duplicate the Fraud Claim.***

For the reasons set forth in Section II.G.3. of the Joint Opposition, the unjust enrichment does not duplicate the fraud claim. Additionally, the Complaint alleges Ikhilov received benefits it was not entitled to: proceeds from the Claimants' litigation funding loans, which were recouped through settlements and judgments and distributed to Ikhilov and other Defendants [Compl. ¶¶ 90, 156, 196, 226].

***K. The Complaint Adequately Pleads a Section 349 Claim.***

For the reasons set forth in Section II.G.4. of the Joint Opposition, the Complaint adequately pled a Section 349 Claim.

Ikhilov challenges the third element of the Section 349 claim by recasting the lawsuit as "essentially a private dispute between businesses," which is not "consumer-oriented conduct"

[Memo at 23]. But the Fraud Scheme is much more than a "private dispute" and impacts the public by "needlessly escalating premiums to the ultimate consumers of liability insurance and the cost of healthcare (i.e., everyone)" [Compl. ¶ 312]. This alone is more than sufficient to qualify as "consumer-oriented conduct." *See e.g., Lyons*, 843 F.Supp.2d at 358 (holding a fraud scheme that obtained no-fault insurance proceeds fraudulently was "consumer-oriented conduct" because it "likely increased the premiums of consumers"). Moreover, Ikhilov's filing of fraudulent legal documents in New York state courts [Compl. ¶¶ 140, 197, 227, Ex. B] injures the public and qualifies as "consumer-oriented conduct." *Securiton Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (providing false information to a state regulatory agency contrary to the public interest).

### *L. The Complaint Adequately Pled a Section 487 Claim.*

A plaintiff states a claim under Section 487 of the New York Judiciary Act by alleging a defendant attorney is 1) guilty of deceit or collusion, or consent to any deceit or collusion, and 2) had an intent to deceive the court or any party. *Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. Apr. 26, 2016).

Here, the Complaint alleges Ikhilov intended to deceive and is guilty of deceiving the court and other parties by filing fraudulent legal documents in the Claimants' lawsuits. For example, the Complaint alleges: "Ikhilov also provided by mail or by electronic service to the Kings County Supreme Court and to all parties in the Kings County proceedings fraudulent document containing false assertions regarding Claimant A's motor vehicle accident, the existence, extent and causality of Claimant A's injuries . . . ." [Compl. ¶ 140]; *see also* [Compl. ¶¶ 15, 89, 197, 227, Ex. B]. Ikhilov intended to deceive the Court and the parties because the legal filings were used to "bolster and add value" to Claimants' personal injury lawsuits, which inflated settlements and Ikhilov's financial gains from them [Compl. ¶¶ 15, 89, 140-41, 197-98, 227-28, Ex. B]. Since at least 2017,

Ikhilov has repeatedly filed fraudulent legal documents not only during the eight exemplar Claimants' personal injury lawsuits cited in the Complaint but in other lawsuits that are part of the Fraud Scheme [Compl. ¶ 81, 96, Ex. B]. This conduct is sufficient to defeat a motion to dismiss for a Section 487 claim. *See Sykes*, 757 F.Supp.2d at 428-29.

Ikhilov argues its misrepresentations in Claimant B's and D's actions are "foreclosed by the[ir] procedural histories": the granting of a summary judgment motion on liability in Claimant B's action and the voluntary discontinuance in Claimant D's action [Memo at 25]. But the outcomes of those actions are irrelevant to determining whether FedEx alleged a plausible Section 487 claim: "'guilty of any deceit' [] focuses on the attorney's intent to deceive, not the deceit's success." *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 14 (2009). What matters is the attempt to deceive – not the deceit's outcome. To hold otherwise would mean a defendant, such as Ikhilov, could commit fraud on the court and other parties with impunity so long as the defendant succeeded.

Ikhilov also argues that FedEx "fails to allege how it has standing or can assert proximately caused damages" [Memo at 25]. But the New York Court of Appeals has made clear "[w]hen a party commences an action grounded in a material misrepresentation of fact in a complaint . . . . that party's legal expenses in defending the lawsuit may be treated as the proximate result of the misrepresentation." *Amalfitano*, 12 N.Y.3d at 15. The Complaint's allegations make clear that but for Defendants' filing and prosecution of fraudulent personal injury lawsuits FedEx would not have incurred litigation expenses at issue here: "Defendants' fraudulent submissions therefore forced FedEx to incur . . . legal fees, expert costs, and other litigation-related expenditures that would not have occurred but for Defendants' deceit." [Compl. ¶ 290]. This is sufficient to allege proximate cause for a Section 487 claim.

### *M. The Complaint Adequately Pled a Declaratory Judgment Claim.*

Based on the allegations in the Complaint, an actual case or controversy exists as to whether FedEx has an obligation to pay any pending claims for services submitted by Defendants as part of the Fraud Scheme [Compl. ¶¶ 327-30]. *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F.Supp.2d 212, 223 (E.D.N.Y. 2009). As a result, the requested declaratory relief will serve a useful purpose – to clarify and settle the legal issues involved in this lawsuit and finalize the controversy and offer relief from uncertainty by determining FedEx's obligation to pay for pending or future charges or costs that have not been paid to date or will be incurred through the pendency of this litigation. *See Tang Cap. Partners, LP v. BRC Inc.*, 661 F.Supp.3d 48, 77 (S.D.N.Y. 2023). Courts have found the entry of a declaratory judgment warranted in "actions [] seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." *Government Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611, 2012 U.S. Dist. LEXIS 58058, at *4 (E.D.N.Y. Apr. 6, 2012), *report and rec. adopted*, 2012 U.S. Dist. LEXIS 58060 (E.D.N.Y., Apr. 25, 2012). Ikhilov's argument that the declaratory judgment claim does not apply to them because they are not medical providers is unavailing. Medical-Defendants' claims for fraudulent medical services inflated the values of the settlements and judgments that financially benefitted Ikhilov.

## III. CONCLUSION

For the reasons stated, Ikhilov Defendants' Motion to Dismiss should be denied, together with any such other and further relief as the Court deems just and proper. Furthermore, to the extent the Court identifies deficiencies in the Complaint, Plaintiff can, pursuant to *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), amend the Complaint to address them.

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1 and Rule 4.C. of this Court's Individual Motion Practice and Rules, the undersigned hereby certifies that the foregoing Memorandum of Law contains 8,652 words, excluding the caption, table of contents, table of authorities, signature block and required certificates.

*/s/ William J. Clay*

**William J. Clay**